## HYMES v. SPECIFICATION MOTOR OILS SYSTEM OF TEXAS, Inc., et al.

### No. 12098.

Court of Civil Appeals of Texas. Dallas.

Feb. 6, 1937.

Rehearing Denied March 6, 1937.

Baskett & Parks, of Dallas, for plaintiff in error.

Hoyet A. Armstrong, of Dallas, for defendants in error.

JONES, Chief Justice.

Plaintiff in error, Mrs. Annye Hymes, will be designated as "plaintiff"; defendant in error, the Specification Motor Oils System of Texas, will be designated "defendant"; and defendants in error, Jack Pettit and Jack Peterson, interveners in the lower court, will be designated "interveners."

Plaintiff instituted this suit in the county court of Dallas county at law No. 1, to recover from defendant the sum of $305, past-due rent on a filling station. Interveners sought and were granted by the trial court leave to intervene, and by their respective pleas alleged against defendant an indebtedness for past-due salaries, amounting to $61.50 to Jack Pettit and $65 to Jack Peterson. Plaintiff sought to foreclose a landlord's lien on certain described property that defendant had placed in the filling station. Interveners sought to foreclose a laborer's lien against the same property.

The court gave plaintiff judgment for the amount of her claim of $305, with interest, but decreed only rents due for February and March, 1934, in the sum of $110, as being the amount due on the written rental contract for the last two months of its twelve-month period, as a superior lien, and for the remaining $195, being the remaining three months of the rental contract, decreed plaintiff's lien inferior to the lien of interveners. The judgment decreed interveners' lien a superior lien to that of plaintiff's as to the $195 claim, and entered judgment directing the property, alleged in plaintiff's petition and in interveners' plea in intervention, be sold, and the proceeds distributed according to the priority of the respective liens.

In accordance with the above decree, plaintiff was first to be paid $110 from the proceeds of the sale, the interveners were to be paid the respective amounts of their claims, and of the remainder, if any, plaintiff was to be paid the balance of her claim of $195. Plaintiff duly perfected an appeal from this judgment, and interveners duly filed cross-assignments to that portion of the judgment decreeing plaintiff's claim of $110 superior to their claims. The following are the necessary facts:

There is no statement of facts, hence the findings of fact filed by the trial court are the findings on this appeal. The

facts found by the trial court show that,·on June 24, 1933, defendant signed the lease contract with plaintiff, who owned the filling station; that said lease contract covered the period of time from April 1, 1933, to June 30, 1934, and the consideration for such contract was the payment by defendant to plaintiff of the sum of $65 per month, payable on the first and fifteenth of each month; that the rent was paid down to February 1, 1934, and $20 paid on the rent for the month of February; that no rental was paid for the remaining months of the lease, ending June 30, 1934; and that on June 30th defendant was indebted to plaintiff for rents in the sum of $305; that the defendant occupied the premises during the full term of the rental contract.

The court's findings of fact further show that intervener Pettit was employed by defendant under a parol contract in July, 1933, to work for defendant in said oil and gas station for the salary of $17.50 per week, and that this salary was paid him up to May 23, 1934, and that thereafter, until June 27, 1934, he only received on his wages the sum of $16, leaving a balance due him of $61.50.

Such findings of fact further show that intervener Peterson was employed by defendant in November, 1933, under a parol contract at a salary of $15 per week, to work at defendant's filling station, and that he received his wages until May 23, 1934, and that from such date until June 27, 1934, he only received the sum of $10, leaving a balance due him of $65.

The findings of fact show that each intervener complied with the provisions of article 5483, R.C.S., in fixing their laborer's liens in the respective amounts claimed by them.

The findings of fact, as to the work performed by each intervener for defendant at the filling station, operated by the defendant and owned by plaintiff, show that the business operated by defendant and the work performed by interveners bring the filling station within the provisions of article 5483, supra, as a designated business in which the law allows a laborer's lien.

■ It is said that: "A determination of the relative standing of the landlord's lien and the lien of a mechanic on a chattel of the tenant in the rented building involves a question of some difficulty." 27 Tex.Jur. § 81, p. 159. The instant case does not deal with a mechanic's lien, but with what is better described as a laborer's lien. Inter-

veners were not employed for mechanical work on any of defendant's property that had been placed in the filling station. Their lien, fixed by filing their statutory affidavits with the county clerk of Dallas county, which was done after their services with the defendant had ceased, did not relate back to the time they entered defendant's employ in the year 1933, but related back to the time defendant defaulted in the payment of their weekly salaries, which was not earlier than May 23, 1934, long after the time defendant had defaulted in payment of rents, for the last three months of the fifteen months of the lease. Which lien —that of plaintiff as defendant's landlord, or that of interveners as defendant's employes—should have priority under these facts? Both are statutory liens. Article 5222, R.C.S. as amended by Acts 1931, c. 100, § 1 (Vernon's Ann.Civ.St. art. 5222), declares that: "All persons leasing or renting lands or tenements at will or for a term of years shall have a preference lien upon the property of the tenant, as hereinafter indicated, upon such premises, for any rent that may become due." Article 5483 declares, in effect, that for the work interveners did under their verbal contracts of employment with defendant, they "shall have a first lien" upon the property of the premises leased by defendant. It will be noted that plaintiff is given by statute a "preference" lien and interveners are given by statute a "first" lien.

If these terms be considered of equal dignity, the one which first took effect should have priority. We are inclined to think, however, that, when the Legislature gave a preference lien to secure the rent, it manifested an intention to make such lien prior to any other lien during a rental year, unless the Legislature should later decree otherwise. Under either rule, we believe that the trial court erred in not allowing plaintiff a prior lien to the lien of interveners, for the reason that the plaintiff's lien, for the last three months of the lease, attached on April 1, 1933, while interveners' liens did not attach until May 23, 1934.

We therefore are of opinion that the judgment of the trial court will have to be reformed, to the extent of allowing plaintiff a first lien on the property of the defendant in the filling station, and allowing interveners a subordinate lien on such property, to be paid after plaintiff's first lien has been satisfied; and it is ordered that the judgment be reformed in this respect.

Reformed, and, as reformed, affirmed.